Warren Norred, Texas State Bar No. 24045094
Clayton L. Everett, Texas State Bar No. 24065212
NORRED LAW, PLLC | 515 E. Border Street | Arlington, Texas 76010
Telephone: (817) 704-3984 | clayton@norredlaw.com
Counsel for Crowley's Services, LLC

# United States Bankruptcy Court
## Northern District of Texas
## Fort Worth Division

| | |
|---|---|
| **In re:**<br>**Crowley's Services, LLC,**<br>**Debtor** | **Case No. 21-41468-mxm11**<br>**Chapter 11**<br><br>**November 19, 2021** |

### CROWLEY'S SERVICES, LLC'S

### SUBCHAPTER V *AMENDED* PLAN OF REORGANIZATION

Crowley's Services, LLC (the "Debtor"), proposes the following Amended Plan of Reorganization ("Plan") pursuant to Chapter 11 of the United States Bankruptcy Code. The Debtor's profitability to fund the Plan is based on the amount of money that it will earn through the continuation of its business. The Debtor shall file periodic financial reports with the Court, as required by the Code, covering the Debtor's profitability, projections of cash receipts and disbursements for a reasonable period, and a comparison of actual cash receipts and disbursements with projections in prior reports. These reports shall be available on the Court's PACER site at www.txnb.uscourts.gov using the Debtor's name or case number as referenced above.

# TABLE OF CONTENTS

Article I: Definitions and Use of Terms ................................................................................ 3

Article II: Information, Background, and Liquidation Analysis ........................................... 9

    Debtor's Structure ............................................................................................................ 9

    Events Precipitating the Chapter 11 Filing .................................................................. 10

    Liquidation Analysis ...................................................................................................... 10

Article III: General Terms and Conditions ....................................................................... 12

Article IV: Designation of Classes of Claims and Interests ............................................. 14

Article V: Provisions for Satisfaction of Claims and Interests ........................................ 14

Article VI: Acceptance of the Plan .................................................................................... 17

Article VII: Means for Implementation of the Plan .......................................................... 17

Article VIII: Treatment of Executory Contracts and Unexpired Leases .......................... 18

Article IX: Enforcement, Settlement, or Adjustment of Claims ....................................... 19

Article X: Effect of Confirmation ..................................................................................... 20

Article XI: Miscellaneous Provisions ............................................................................... 22

Article XII: Modification of the Plan ................................................................................ 26

Article XIII: Retention of Jurisdiction .............................................................................. 26

## Article I: Definitions and Use of Terms

1.    **Defined Terms**. Unless the context otherwise requires, capitalized terms shall have the meanings outlined in this section.

2.    **Administrative Claim** or **Expense** means an administrative expense or claim described in 11 U.S.C. § 503 of the Bankruptcy Code and entitled to administrative priority pursuant to § 507(a)(1) of the Bankruptcy Code, including, but not limited to, claims for compensation of professionals made pursuant to §§ 330 and 331 of the Bankruptcy Code, and all fees and charges assessed against the Debtor and Debtor's property under 28 U.S.C. § 1930.

3.    **Administrative Tax Claim** means an Unsecured Claim by any governmental unit for taxes (including interest or penalties related to such taxes) for any tax year or period, all or a portion of which occurs or falls within the period from and including the Petition Date through the Effective Date.

4.    **Allowed Claim** means a Claim against the Debtor allowable under the Bankruptcy Code to the extent that (i) a proof of Claim, proof of Interest, or payment request was timely Filed or, with leave of the Bankruptcy Court, late Filed, and as to which no objection has been timely Filed or, if Filed, is allowed by a Final Order, unless otherwise provided in this Plan or (ii) the Claim is scheduled and not listed as disputed, contingent, or unliquidated, and to which no objection has been timely Filed or, if Filed, is allowed by a Final Order.

5.    **Allowed Secured Claim** means any Allowed Claim secured by a lien, security interest, or other charge or interest in property in which the Debtor has an interest,

to the extent of the value thereof (determined in accordance with 11 U.S.C. § 506(a)).

6.      **Bankruptcy Code** or **Code** means the United States Bankruptcy Code, Title II of the United States Code §§ 101 et seq., as amended.

7.      **Bankruptcy Court** or **Court** means the United States Bankruptcy Court for the Northern District of Texas, Ft. Worth Division or such other court that may have jurisdiction with respect to the reorganization of the Debtor pursuant to Chapter 11 of the Bankruptcy Code.

8.      **Bankruptcy Rule** means the Federal Rules of Bankruptcy Procedure.

9.      **Bar Date** means subsequent to which a proof of pre-petition Claim may not timely be filed or the date by which proofs of claims held by governmental agencies must be filed.

10.     **Case** means this Chapter 11 Bankruptcy Case in the Bankruptcy Court.

11.     **Claim** shall have the meaning set forth in 11 U.S.C. § 101(5) of the Bankruptcy Code.

12.     **Claimant** means any person or entity having or asserting a Claim in the case.

13.     **Class** or **Classes** mean all of the holders of Claims or Interests that the Debtor has designated pursuant to 11 U.S.C. § 1123(a)(1) of the Bankruptcy Code as having substantially similar characteristics as described in Article IV of this Plan.

14.     **Confirmation** means the entry by the Bankruptcy Court of a Confirmation Order confirming this Plan.

15.    **Confirmation Date** means the date on which the Confirmation Order is entered.

16.    **Confirmation Hearing** means the hearing or hearings held before the Bankruptcy Court in which the Debtor will seek Confirmation of this Plan.

17.    **Confirmation Order** means the Order of the Court confirming this Plan under 11 U.S.C. § 1129 of the Bankruptcy Code.

18.    **Contested** when used with respect to a Claim, means a Claim against the Debtor that (a) is listed in the Debtor's Schedules of Assets and Liabilities as disputed, contingent, or unliquidated; (h) is the subject of a pending action in a forum other than the Bankruptcy Court unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (c) as to which an objection has been or may be timely filed and has not been denied by Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

19.    **Creditor** shall have the meaning specified by 11 U.S.C. § 101(9) of the Bankruptcy Code.

20.    **Debtor** or **Debtor-in-Possession** means Crowley's Services, LLC.

21.    **Disputed Claim** means any Claim that is not an Allowed Claim.

22.    **Effective Date** means thirty days after the Confirmation Date.

23.    **Estate** means the estate created pursuant to 11 U.S.C. § 541 of the Bankruptcy Code with respect to the Debtor.

24. **Fee Claim** means a Claim under 11 U.S.C. §§ 330 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses to professionals in the Debtor's Chapter 11 case.

25. **Filed** means delivered to the Clerk of the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division.

26. **Final Order** means an Order as to which any appeal that has been taken has not been stayed following the expiration of the time for appeal or has been resolved, or as to which the time for appeal has expired.

27. **General Unsecured Claim** means an Unsecured Claim that is not entitled to priority under 11 U.S.C. § 507(a) of the Bankruptcy Code.

28. **Impaired** means the treatment of an Allowed Claim pursuant to the Plan unless, with respect to such Claim, either (i) the Plan leaves unaltered the legal, equitable, and contractual rights to which such Claim entitles the holder of such Claim, or (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after occurrence of a default, the Debtor (A) cures any default that occurred before or after the commencement of the Chapter 11 Case on the Petition Date, other than default of the kind specified in 11 U.S.C. § 365(b)(2) of the Bankruptcy Code; (B) reinstates the maturity of such Claim as such maturity existed before such default; (C) compensates the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (D) does not otherwise alter the legal, equitable, or

contractual rights to which such Claim entitles the holder of such Claim; or (iii) the

Plan provides that on the Effective Date, the holder of such Claim receives, on

account of such Claim, cash equal to the Allowed Amount of such Claim.

29.   **Petition Date** means June 18, 2021, the date the Debtor's petition was filed

commencing this bankruptcy case.

30.   **Plan** means this Plan of Reorganization, as it may be amended or modified

from time to time as permitted herein and by the Bankruptcy Court.

31.   **Prepetition** means before the Petition Date.

32.   Priority Tax Claim means a Claim entitled to priority pursuant to 11 U.S.C.

507(a)(8) of the Bankruptcy Code.

33.   **Pro Rata** means proportionately, based on the percentage that the amount of

an Allowed Claim within a particular Class bears to the aggregate amount of all

Allowed Claims in such Class.

34.   **Property of the Estate** means all property in which the Debtor holds a legal

or equitable interest, including all property described in 11 U.S.C. § 541 of the

Bankruptcy Code. In a case in which the debtor is an individual, property of the

estate includes, in addition to the property specified in § 541: (1) all property of the

kind specified in § 541 that the debtor acquires after the commencement of the case

but before the case is closed, dismissed, or converted to a case under another

chapter; and (2) earnings from services performed by the debtor after the

commencement of the case but before the case is closed, dismissed, or converted to

another chapter whichever occurs first. The Debtor shall remain in possession of all

property of the estate unless provided for otherwise in the Plan or Confirmation

Order.

35.    **Rejection Claim** means any Claim arising pursuant to 11 U.S.C. § 502(g) by

reason of rejection by the Debtor of an executory contract or unexpired lease

pursuant to §§ or 1123(b)(2) of the Bankruptcy Code.

36.    **Secured Claim** means any Claim secured by a lien, security interest, or other

charge or interest in property in which the Debtor has an interest, to the extent of

the value thereof (determined in accordance with 11 U.S.C. § 506(a) of the

Bankruptcy Code).

37.    **Secured Tax Claim** means any Tax Claim which is secured by real or

personal property.

38.    **Secured Creditor** or Secured Claimant means any Claimant holding a

Secured Claim.

39.    **Unimpaired** means not impaired as described above.

40.    **Unsecured Claim** means any Claim not collateralized (or the extent not fully

collateralized) by assets of the Debtor.

41.    **Unsecured Claimants** or **Unsecured Creditors** means any holder of an

Unsecured Claim.

42.    **Voidable Transfer** means all transfers voidable under §§ 544, 545, 547, 548,

549 and/or 550 of the Bankruptcy Code or any other applicable state or federal law.

43.    <u>Number and Gender of Words</u>. Whenever the singular number is used, it

shall include the plural, and the plural shall include the singular, as appropriate to

the context. Words of any gender shall include each other gender where appropriate.

44.    <u>Terms Defined in the Bankruptcy Code</u>. Capitalized terms not specifically defined in section I of the Plan shall have the definitions given those terms, if applicable, in the 11 U.S.C. §§ 101 et seq. of the Bankruptcy Code.

45.    <u>Headings</u>. The headings and captions used in this Plan are for convenience only and shall not be deemed to limit, amplify or modify the terms of this Plan nor affect the meaning thereof.

46.    <u>Time Computation</u>. In computing any period of time prescribed herein, the provisions of Federal Rule of Bankruptcy Procedure 9006(a) shall apply.

## Article II: Information, Background, and Liquidation Analysis

47.    <u>Generally</u>. The Plan is a plan of reorganization. The Debtor shall continue its business after the Confirmation Date.

## Debtor's Structure

48.    The Debtor Crowley's Services, LLC is a small-scale, over-the-road trucking company operating in the lower forty-eight states. The Debtor is solely owned and managed by Jerry Crowley, Jr. The Debtor leases a nine hundred square foot business office located at 5810 Dick Price Rd., Fort Worth, Texas 76140.

49.    The Debtor currently employs two drivers, one as an employee and the other as an independent contractor. The Debtor also employs Mr. Crowley, Jr. and pays a management fee of $650 per week. Upon the completion of the repairs to one of the

tractor-trailers, Mr. Crowley, Jr. will drive that tractor-trailer and be paid additional compensation for his labor.

## Events Precipitating the Chapter 11 Filing

50.    In August of last year, the Debtor ran approximately eight tractor-trailers but has since downsized to two running tractor-trailers, with a third tractor-trailer in the process of being repaired. The Debtor anticipates operating the third vehicle on or about October 2021.

51.    In 2019, the Debtor lost an important contract which led to its inability to timely pay its independent contract drivers. As a result, the drivers left the Debtor to pursue work elsewhere. The Debtor was subsequently unable to make payment on several pieces of equipment, including tractor-trailers and trailers. This equipment was either surrendered or foreclosed upon.

52.    Former secured creditor, Continental Bank sought a deficiency judgment against the Debtor in Utah state court. After receiving a default judgment against the Debtor, Continental Bank sought to domesticate its judgment in Texas and to pursue collection against the Debtor's assets. The Debtor filed this bankruptcy proceeding to prevent a judgment lien from attaching to the remaining equipment and to preserve the going concern value to all the Debtor's creditors, employees, and other interested parties.

## Liquidation Analysis

53.    The Debtor owns no real property.

54.    As of the Petition Date, the Debtor owned the personal property as described below:

| List of Assets | Value of Asset |
|---|---|
| Cash | $ 9,966.90 |
| Office Furniture & Equipment | $ 1,530.00 |
| 1999 Freightliner Century VIN xx5471 | $ 6,500.00 |
| 2013 Freightliner Cascadia VIN xx2735 | $ 33,375.00 |
| 1978 Fruehauf Tanker VIN xx2302 | $ 7,500.00 |
| 1969 Butler Tanker VIN xxBPAM | $ 5,000.00 |
| 2009 Heil Trailer VIN xx7475 | $ 12,000.00 |
| 2009 Heil Trailer VIN xx7474 | $ 12,000.00 |
| Total Asset Value    $87,871.90 | |

55.    The Debtor has prepared this analysis based on its opinion of the value of its assets. There is no current appraisal on the assets other than the Debtor's opinion and the Mercedes-Benz opinion of the value of the 2013 Freightliner Cascadia, found in proof of claim number two.

56.    Liquidation Calculation. Taking into account the priority and nonpriority unsecured claims in this case, based on the above asset valuations, a Chapter 7 liquidation would not pay the unsecured claims:

| Class No. | Type of Claim | Value |
|---|---|---|
| Class 1 | Administrative Expenses and Subchapter V Fees | $ 7,680.00 |
| Class 2 | Allowed Priority Claims | *Unknown* |
| Class 3 | Allowed Secured Claim of Mercedes-Benz | $ 30,947.92 |
| Class 4 | Allowed Unsecured Claims | $ 157,042.68 |
| Class 5 | Equity Interests | *N/A* |
| **Total Debts** | | **$ 195,670.60** |
| | | |
| **Total Assets (reduced 35% for collection & liquidation)** | | **$ 57,116.74** |
| | | |
| **Debt after Liquidation** | | **$ 138,553.87** |

## Comparison

| *Liquidation* | *Plan Treatment* |
|---|---|
| Allowed secured claims paid approximately 70% | Allowed secured claims paid approximately 100% |
| Allowed unsecured claims paid approximately 24% | Allowed unsecured claims paid approximately 57% |

## Article III: General Terms and Conditions

57.   <u>Treatment of Claims</u>. This Plan is intended to resolve all Claims against the Debtor or property of the Debtor of whatever character, whether contingent or liquidated, or whether allowed by the Bankruptcy Court pursuant to 11 U.S.C. § 502(a). However, only Allowed Claims will receive treatment afforded by the Plan. The Plan is designed to ensure that Claimants shall receive at least as much pursuant to this Plan as they would receive in a liquidation of the Debtor's assets pursuant to Chapter 7 of the Bankruptcy Code.

58.   <u>Time for Filing Claims</u>. The holder of any Administrative Claim other than (i) a Fee Claim, (ii) a liability incurred and paid in the ordinary course of business by the Debtor, or (iii) an Allowed Administrative Claim, must file with the Bankruptcy Court and serve on the Debtor and its respective counsel, notice of such Administrative Claim within thirty (30) days after the Effective Date. At a minimum, such notice must identify (a) the name of the holder of such Claim, (b) the amount of such Claim, and (c) the basis of such Claim. Failure to file this notice timely and properly shall result in the Administrative Claim being forever barred and discharged. Each Person asserting an Administrative Expense that is a Fee

Claim incurred before the Effective Date shall be required to file with the Bankruptcy Court, and serve on the Debtor's counsel and the U.S. Trustee, a Fee Application within sixty (60) days after the Effective Date. A person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer. Liabilities incurred from the Petition Date through the Effective Date in the ordinary course of business shall be paid in the ordinary course of business by the Debtor.

59.   <u>Modification to the Plan</u>. In accordance with Bankruptcy Rule 3019, to the extent applicable, this Plan may be modified or amended upon application of the Debtor, or corrected prior to the Confirmation Date, provided that notice and an opportunity for hearing have been given to any affected party. The Plan may be modified at any time after Confirmation and before the Effective Date, provided that the Plan, as modified, meets the requirements of §§ 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under § 1129 of the Bankruptcy Code, the circumstances warrant such modification and Debtor consents thereto in writing. If the debtor is an individual the plan may be modified at any time after confirmation of the plan, but before the completion of payments under the plan, whether or not the plan has been substantially consummated upon request of the debtor, the trustee, the United States Trustee, or the holder of an allowed unsecured claim, to (1) increase or reduce the amount of payments on claims of a particular class provided for by the

plan; (2) extend or reduce the time period for such payments; or (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim made other than under the plan.

### Article IV: Designation of Classes of Claims and Interests

60.    The Debtor designates the following Classes of Claims and Interests pursuant to 11 U.S.C. § 1123. The Debtor shall pay all fees assessed by the Office of the United States Trustee until this Case is closed, a Final Decree is entered by the Court, or the Debtor is otherwise released from such obligations by the Court.

61.    Class 1 consists of Administrative Claims.

62.    Class 2 consists of any Allowed Priority Creditor Claims.

63.    Class 3 consists of the Allowed Secured Claim of Mercedes-Benz.

64.    Class 4 consists of the Allowed Unsecured Claim of Unsecured Creditors, including Mercedes-Benz, CAB Assignee of Keep Truckin, JPMorgan Chase Bank, and Continental Bank.

65.    Class 5 consists of the Allowed Interests of Equity Interest Holders.

### Article V: Provisions for Satisfaction of Claims and Interests

66.    The Claims and Interests classified in Article IV shall be treated in the manner set forth in this Article V.

67.    Class 1: Administrative Claims. This class consists of the administrative expenses and claims of professionals and of the United States Trustee under § 503(b) of the Bankruptcy Code and all fees and charges assessed against the Debtor

under Title 28 of the United States Code. The compensation of professionals, such as attorneys and accounts, is subject to approval by the Court. The timing of payment to such professionals for compensation for services rendered and reimbursement of expenses will be made as authorized and allowed by the Court. The Court will review all requests for compensation and reimbursement of expenses.

68.    All Class 1 expenses and claims for fees will be paid as provided for in future Court Orders, or as may be agreed upon.

69.    In Subchapter V cases, debtors are allowed to pay postpetition administrative expense claims of professionals throughout the life of the plan. Accordingly, the fees and expenses that are approved for the Subchapter V Trustee will be paid monthly pursuant to prior order of the Court.

70.    The Debtor will pay any additional fees to Debtor's counsel beginning on the Effective Date and continuing throughout the life of the Plan or as further agreed upon between the Reorganized Debtor's representative and Debtor's counsel.

71.    Each holder of an Administrative Claim other than Professional Fee Administrative Claims shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Administrative Claim, (i) Cash equal to the unpaid portion of such Allowed Administrative Claim or (ii) such other treatment as to which the Debtor and such holder shall have agreed upon in writing; provided, however, that Allowed Administrative Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the

Bankruptcy Case shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto.

72.     <u>Time for Filing Administrative Claims</u>. The holder of an Administrative Claim, other than a professional service expense must file with the Bankruptcy Court, and serve on the Debtor, its counsel, the U.S. Trustee, and any party filing a Notice of Appearance, a notice of such administrative claim within thirty days for the Effective Date of the Plan. Such notice must include at a minimum (a) a statement of the date the liability for the claim was incurred; (b) the holder of the claim; (c) the amount of the claim; and (d) the basis for the claim. **Failure to file timely and properly serve the notice under this paragraph shall result in the administrative claim being forever barred, discharged, and disallowed.**

73.     <u>Class 2: Allowed Priority Creditor Claims</u>. Priority Claims, if any, will be paid within sixty months from the Effective Date, together with any applicable statutory interest.

74.     <u>Class 3: Allowed Secured Claim of Mercedes-Benz</u>. The Secured Claim of Mercedes-Benz is secured by Debtor's 2013 Cascadia Freightliner Tractor with VIN xxx2735. The Debtor remains substantially in compliance with its obligations under the Texas Motor Vehicle Retail Installment Contract to Mercedes-Benz. The Debtor will continue to perform the obligation under the installment contract which is incorporated here as the treatment for Mercedes-Benz's Secured Claim. Mercedes-Benz's lien against the 2013 Cascadia will remain intact and unaltered.

75. <u>Class 4:  General Unsecured Creditor Claims</u>. Beginning in month fifteen of the Plan, the Debtor will make pro rata distributions to the unsecured creditors claim.

76. <u>Class 5: Equity Interests</u>. The Debtor shall retain its equity interests.

## Article VI: Acceptance of the Plan

77. <u>Objection Required</u>. Under Subchapter V, the Debtor is not required and will not be filing a disclosure statement or soliciting votes for acceptance or reject of the Plan. **Absent any written objection, the Creditors shall be deemed to have accepted the Plan per section 1129(a)(7)(A)(i) and to have waived its rights under 1129(a)(7)(A)(ii)**.

78. <u>Consensual Plan</u>. Absent an Objection, the Plan will be deemed a consensual plan under section 1191(a). If a party objects to the Plan and if that objection has not been resolved at the time of Confirmation, then the Plan will be deemed nonconsensual.

## Article VII: Means for Implementation of the Plan

79. <u>Implementation of Plan</u>. This Plan will be implemented, pursuant to § 1123(a)(5) of the Bankruptcy Code, by the commencement of payments as called for above. Projections for this Plan are attached as exhibit "A" and incorporated herein by reference as if outlined in full for all purposes. Upon the Effective Date, all property of the Debtor and its Estate shall vest in the Debtor, subject to the Allowed Secured Claims in this Plan. The funds necessary for the satisfaction of the

creditors' claims shall be generated from the Debtor's income derived from its trucking operations.

80.    <u>The Debtor as Disbursing Agent</u>. Pursuant to section 1194(b), this Plan provides that the reorganized Debtor will make the payments to creditors.

81.    <u>No Bond Required</u>. In the event that the Court orders that the Subchapter V Trustee shall make the plan payments to creditors, then the Subchapter V Trustee will not be required to obtain a separate or additional bond. A bond is not required because the Subchapter V Trustee, as the Disbursing Agent, will not distribute more than $50,000 at one specific time pursuant to the Plan Projections attached as exhibit "A."

82.    <u>Feasibility of the Plan</u>. The Debtor asserts that its Plan is feasible based on its monthly average budget. The average monthly budget is derived from Debtor's profit and loss statements from December 2020 through July 2021 and fairly represents what the Debtor expects to earn on average going forward. A copy of the projected monthly budget is attached as exhibit "B."

### Article VIII: Treatment of Executory Contracts and Unexpired Leases

83.    <u>Assumed Executory Contracts and Unexpired Leases</u>. The Debtor assumes the real property lease concerning its office facility located at 5810 Dick Price Rd., Fort Worth, Texas 76140, and all insurance policies under which the Debtor is the insured party as of the Confirmation Date.

84.    <u>Rejection of Executory Contracts and Unexpired Leases</u>. All contracts and unexpired leases not assumed shall be rejected. Claims created by the rejection of

any executory contract or unexpired lease must be served on counsel for the Debtor and filed with the Court no later than sixty days after the entry of a final order confirming the Plan. Any claim not filed within such time will be forever barred as against the Estate, the Debtor, and Reorganized Debtor. All such claims arising from the rejection of the executory contract or lease shall be treated under Class 4 as a General Unsecured Claim.

85.    <u>Reservation of Rights</u>. The Debtor shall have the right to assume or reject, pursuant to Bankruptcy Code § 365, prior to the Confirmation Date, any executory contract or unexpired lease of real property (to the extent permitted under the Bankruptcy Code and applicable law).

## Article IX: Enforcement, Settlement, or Adjustment of Claims

86.    <u>The Debtor's Causes of Action</u>. Except as otherwise released pursuant to the Plan, all Claims recoverable under § 550 of the Bankruptcy Code, all Claims against third parties on account of an indebtedness, and all other Claims of any kind or character whatsoever owed to or in favor of the Debtor or the Estate to the extent not specifically compromised and released pursuant to this Plan or any agreement referred to and incorporated herein, are hereby reserved and retained for enforcement by the Debtor for the benefit of the Creditors after the Effective Date. This Plan shall not estop, waive, or otherwise prevent the Debtor from asserting any claim or cause of action whether disclosed or not.

87.    <u>Objections to Claims</u>. Any party authorized by the Bankruptcy Code may object to the allowance of prepetition Claims at any time before sixty (60) days after

the Effective Date and, as to Rejection Claims, at any time prior to sixty (60) days after the filing of any such Rejection Claim. Any proof of Claim filed after the Court sets bar dates shall be of no force and effect and shall be deemed disallowed. All Contested Claims shall be litigated to Final Order; provided, however, that the Debtor may compromise and settle any Contested Claim, subject to the approval of the Bankruptcy Court. Notwithstanding the foregoing, a person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer. No distributions under this Plan shall be made to the holder of a Claim that is in dispute, unless and until such Claim becomes an Allowed Claim. If a Claim is disputed in whole or in part because the Debtor asserts a right of offset against such Claim or recoupment against the holder of such Claim, then, if and to the extent the Claim giving rise to the offset or recoupment is sustained by Final Order, the Claim in dispute shall be reduced or eliminated and, if applicable, the holder of such Claim shall be required to pay the amount of such offset or recoupment, less the amount of its Allowed Claim. In addition, any party authorized by the Bankruptcy Code, at any time, may request that the Court estimate any contingent, disputed, or unliquidated Claim pursuant to § 502(c) of the Bankruptcy Code, regardless of any prior objections.

## Article X: Effect of Confirmation

88.  <u>Discharge and Release of Debtor</u>. Pursuant to Bankruptcy Code § 1141(d), confirmation of this Plan forever discharges the Debtor.

89. <u>Legal Binding Effect</u>. Pursuant to Bankruptcy Code § 1141, the confirmed Plan shall bind the Debtor and all Creditors, whether or not they accept this Plan. The distributions provided for Claimants shall not be subject to any Claim by another creditor or interest holder by reason of any assertion of a contractual right of subordination.

90. <u>Discharge</u>. Confirmation of the Plan shall result in the inability to commence or continue any judicial, administrative, or other action or proceeding on account of any prepetition Claims against the Debtor. Except as provided in the Plan, from and after the Confirmation Date, all holders of Claims against the Debtor are restrained and enjoined (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Debtor, or its property; (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Assets or the Debtor on account of such Claims; (c) from creating, perfecting, or enforcing any encumbrance of any kind against the Assets, or the Debtor on account of such Claims; (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor on account of such Claims; and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan on account of such Claims; provided, however, that each holder of a Contested Claim may continue to prosecute its proof of Claim in the Bankruptcy Court and all holders of Claims shall be entitled to enforce its rights under the Plan and any agreements executed or delivered

pursuant to or in connection with the Plan. Creditors shall not pursue claims against non-debtor third parties at the same time as their claims are being paid in full through the Plan. Such restraint shall be consistent with the discharge granted to the Debtor in connection with confirming its Plan as called for by the Bankruptcy Code.

91.    All liens securing Claims which are not Allowed pursuant to the provisions of the Plan or Bankruptcy Code Section 502 and 506 shall be invalidated and deemed null and void and of no further force and effect.

92.    Holder of Allowed Secured Claims are authorized and directed to cooperate with the Debtor to properly reflect the liens, claims, and repayment securing those claims once the Plan is confirmed.

93.    Distributions provided under the Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims and Interests regarding any of the Debtor's assets or properties, including Claims arising after the date of filing the Petition and prior to Confirmation. Unless otherwise specifically provided to the contrary herein or in the Confirmation Order, on or after Confirmation, all Holders of Claims or Interests are precluded from asserting any Claim against the Debtor or its assets or properties, or against any other person, corporation, or entity who may be liable to any creditor in this case for debts of the Debtor.

### Article XI: Miscellaneous Provisions

94.    <u>Revesting of Property</u>. Excepts as otherwise provided herein, the property of the Debtor shall revest in the Reorganized Debtor on the Effective Date. After the

Effective Date, the Reorganized Debtor may use, buy, acquire, and dispose of property, free of any restrictions contained in the Bankruptcy Code.

95.     Revocation. The Debtor reserves the right to revoke and withdraw this Plan at any time prior to the Confirmation Date.

96.     Effect of Withdrawal or Revocation. If the Debtor revokes or withdraws this Plan prior to the Confirmation Date, or if the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor.

97.     Due Authorization by Creditors. Each and every Claimant who elects to participate in the distributions provided herein warrants that it is authorized to accept in consideration of its Claim against the Debtor the distributions provided in the Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under this Plan.

98.     Entire Agreement. This Plan, as described herein, the Confirmation Order, and all other documents and instruments to effectuate this Plan provided for herein, constitute the entire agreement and understanding among the parties hereto relating to the subject matter hereof and supersedes all prior discussions and documents.

99.    <u>11 U.S.C. § 1146 Exemption</u>. Pursuant to § 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of any security, or the making or delivery of an instrument of transfer under this Plan, may not be taxed under any federal, state or local law imposing a stamp, transfer, or similar tax or fee.

100.    <u>Provisions Governing Distributions</u>. All payments and distributions under the Plan shall be made by the Debtor as indicated. Payments or distributions to be made by the Debtor pursuant to the Plan shall begin on the twenty-first day of the month following the Effective Date, except as otherwise provided for in the Plan, or as may be ordered by the Bankruptcy Court. Any payment or distribution by the Debtor pursuant to the Plan, to the extent delivered by the United States Mail, shall be deemed made when deposited into the United States Mail. Payments of Cash to be made by the Debtor pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank. Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth on the proofs of Claim or proofs of interest filed by such holders (or at the last known addresses of such holders if no proof of Claim or proof of interest is filed). All Claims for undeliverable distributions shall be made on or before the second anniversary of the Effective Date. After such date, all unclaimed property shall remain the property of the Debtor and the Claim of any other holder with respect to such unclaimed property shall be discharged and forever barred. Checks issued by the Debtor in respect of Allowed Claims shall be null and void if not cashed within 90 days of the date of delivery thereof. Requests for reissuance of any check shall be

made directly to the Debtor by the holder of the Allowed Claim to whom such check originally was issued. Any claim in respect of such a voided check within 90 days after the date of delivery of such check. After such date, all Claims in respect of void checks shall be discharged and forever barred, and the amount of such checks shall become Unclaimed Property and returned to the Debtor. No interest shall be paid on any Claim unless, and only to the extent that, the Plan specifically provides otherwise.

101.    <u>Governing Law</u>. Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

102.    <u>Default & Cure Period</u>. Unless otherwise stated in this Plan, if the Debtor fails to satisfy any of the obligations under this Plan and such default is not cured within 21 business days of the date of transmission of notice of the default to the Debtor, then the defaulted party may pursue all of its remedies outside of the Bankruptcy Court, including, but not limited to, foreclosure on its lien(s) on property. For purposes of this provision, notice shall be provided to the Debtor, c/o Clayton Everett, Norred Law PLLC, 515 E. Border Street, Arlington, Texas 76010, and by facsimile at (817) 524-6686.

## Article XII: Modification of the Plan

103.    The Debtor may propose amendments to or modifications of this Plan at any

time   prior   to   Confirmation,   upon   notice   to   all   parties-in-interest.   After

Confirmation, the Debtor may, with approval of the Court and so long as it does not

materially or adversely affect the interest of creditors, modify to remedy any defect

or  omission  or  reconcile  any  inconsistencies  in  the  Confirmation  Order  in  such

manner as may be necessary to carry out the purposes and effect of this Plan.

## Article XIII: Retention of Jurisdiction

104.    Notwithstanding  confirmation  of  the  Plan  or  the  Effective  Date  having

occurred, the Court will retain jurisdiction for the following purposes:

105.    <u>Allowance of Claims</u>. To hear and determine the allowability of all Claims

upon objections to such Claims.

106.    <u>Executory Contracts and Unexpired Leases Proceedings</u>. To act with respect

to  proceedings  regarding  the  assumption  of  any  executory  contract  or  unexpired

lease of the Debtor pursuant to §§ 365 and 1123 of the Bankruptcy Code and Article

VII of the Plan.

107.    <u>Plan Interpretation</u>. To resolve controversies and disputes regarding the

interpretation of the Plan.

108.    <u>Plan Implementation</u>. To implement and enforce the provisions of the Plan

and enter orders in aid of confirmation and implementation of the Plan.

109.    <u>Plan Modification</u>. To modify the Plan pursuant to § 1127 of the Bankruptcy

Code and applicable Bankruptcy Rules.

110. <u>Adjudication of Controversies</u>. To adjudicate such contested matters and adversary proceedings as may be pending or subsequently initiated in the Court against the Debtor.

111. <u>Injunctive Relief</u>. To issue any injunction or other relief as appropriate to implement the intent of the Plan, and to enter such further orders enforcing any injunctions or other relief issued under the Plan or in the Confirmation Order.

112. <u>Interpleader Action</u>. To entertain interpleader actions concerning assets to be distributed or other assets of the Estate.

113. <u>Correct Minor Defects</u>. To correct any defect, cure any omission or reconcile any inconsistency or ambiguity in the Plan, the Confirmation Order or any document executed or to be executed in connection therewith, as may be necessary to carry out the purposes and intent of the Plan, provided that the rights of any holder or an Allowed Claim are not materially and adversely affected thereby.

114. <u>Authorization of Fees and Expenses</u>. To review and authorize payment of professional fees incurred prior to the Effective Date.

115. <u>Subsequent Orders Regarding Confirmation</u>. To enter and implement such orders as may be appropriate in the event the Confirmation Order is, for any reason, stayed, reversed, revoked, modified, or vacated.

116. <u>Final Decree</u>. To enter a final decree closing the Case pursuant to Bankruptcy Rule 3022.

Respectfully submitted,

NORRED LAW, PLLC

By: _____

Clayton L. Everett,
Texas State Bar No. 24065212
clayton@norredlaw.com
515 E. Border Street
Arlington, Texas 76010
Telephone: (817) 704-3984
Counsel for Crowley's Services, LLC

By: _____
Owner of Crowley's Services, LLC
Debtor in Possession